IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01929-REB-MEH

JOHN MARSHALL COGSWELL,

    Plaintiff,
v.

JOSEPH R. BIDEN, JR., President of the United States Senate,

    Defendants.
_____

**RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(1)**
_____

Pending before the Court is Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) [filed November 14, 2008; docket #8]. The Motion has been referred to this Court for recommendation [docket #10]. *See* 28 U.S.C. § 636(b)(1)(A); D.C. Colo. LCivR 72.1.C. The matter is fully briefed, and the Court held a hearing regarding the Motion on February 5, 2009. For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) be **granted**.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

**I.   Background**

Plaintiff initiated this "*Bivens* type action" on September 9, 2008.  (Docket #1.)  In his original Complaint, Plaintiff named Henry Paulson, U.S. Secretary of the Treasury, and Richard Cheney, as President of the U.S. Senate, as defendants.  Plaintiff requested the Court to issue an injunction enjoining Henry Paulson, the U.S. Secretary of the Treasury, from paying the salaries of the U.S. Senators until the U.S. Senate advises and consents to "the President's nominated district court judges" by appointing two more judges to the bench of the U.S. District Court for the District of Colorado.[2]  (*Id*. at 1, 11.)  Alternately, Plaintiff sought a declaratory judgment stating that the "unreasonable delay of the U.S. Senate in acting on the President's nominations means consent to such nominations without advice."  (*Id*. at 1.)  On February 5, 2009, the Court granted a motion submitted by Plaintiff to dismiss his request for an injunction and Henry Paulson as a party, and to substitute Joseph R. Biden, Jr., pursuant to Fed. R. Civ. P. 25(d), as a party in the stead of Richard Cheney.  (*See* Docket #18.)  Thus, this Recommendation pertains only to Plaintiff's request for a declaratory judgment against Joseph R. Biden, Jr., as President of the U.S. Senate.

Plaintiff submits that the delay of the United States District Court in awarding attorney's fees in a case in which Plaintiff was named as a defendant and subsequently dismissed without prejudice creates an injury giving rise to his right to bring this suit.  He also contends the "unreasonable" time taken by the U.S. Senate in filling the open district court seats in Colorado violate his "constitutional right to meaningful access to this Court."  (*Id*. at 6-7.)  Plaintiff further presents to the Court that it can infer the Plaintiff, as a "member of the people's constituent power," also represents all other litigants "throughout the nation" who he alleges are affected with the same injury he asserts.  (Docket #15 at 5.)  Plaintiff reiterated these arguments at the February 5, 2009 hearing.

---

[2]At the time Plaintiff filed his Complaint, three seats were vacant and one has since been filled.

In response, Defendants filed the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) presently before the Court. (Docket #8.) Defendants construe Plaintiff's Complaint as a challenge to the Senate judicial confirmation process itself, not a true claim against the named defendants, which is therefore protected by the Speech or Debate Clause. (*Id*. at 3, 7-8.) Furthermore, Defendants contend Plaintiff lacks standing and the "political question doctrine deprive[s] this Court of subject matter jurisdiction." (*Id*. at 1.)

**II.     Standard for Dismissal under Fed. R. Civ. P. 12(b)(1)**

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).

In a lawsuit against the United States or an agency of the United States, the United States must waive its sovereign immunity and consent to suit in order for a court to exercise subject matter jurisdiction over the case. *See, e.g., U.S. v. Mitchell*, 463 U.S. 206, 212 (1983); *Lonsdale v. U.S.*, 919 F.2d 1440, 1442-44 (10th Cir. 1990). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909.

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less

3

stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). Although Plaintiff represents himself in this case, Plaintiff is a lawyer admitted in good standing in the U.S. District Court for the District of Colorado, therefore the Court holds Plaintiff to the standards expected from members of the Bar.

### III. Analysis

The Court recommends Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) be granted for three reasons.[3] First, Plaintiff's assertion of *Bivens* as the jurisdictional basis for his claim is improper; second, Plaintiff lacks standing; and third, the political question doctrine bars Plaintiff's action. The Court addresses each grounds for dismissal in turn.

#### *A. Bivens*

The Court construes Plaintiff's suit against Joseph R. Biden, Jr., to be in his official capacity as the President of the U.S. Senate. Official capacity suits against a federal officer are in actuality suits against the United States. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) ("when an

---

[3]The Court emphasizes that Defendants' Motion to Dismiss is pursuant to Fed. R. Civ. P. 12(b)(1), which is evaluated by a standard different from that of Fed. R. Civ. P. 12(b)(6), contrary to what Plaintiff asserts in his Response. Plaintiff argues the Court should only grant the Motion to Dismiss "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face." (Docket #15 at 1 (citations omitted).) The cases Plaintiff cites to support this contention consider the standard for a motion to dismiss under 12(b)(6), not 12(b)(1). 12(b)(1) requires the Court determine its authority to adjudicate the case, not the value of the merits of the claim. The Court's authority in this matter is precluded by subject matter jurisdiction and the justiciability doctrines of standing and political question, therefore the Court recommends dismissal for lack of jurisdiction.

action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." (citations omitted)). "It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived." *Atkinson*, 867 F.2d at 590 (citations omitted).

In his Complaint, Plaintiff relies on *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* in conjunction with 28 U.S.C. § 1331, commonly referred to as a *Bivens* action, to establish subject matter jurisdiction over his claims. 403 U.S. 388 (1971). In *Bivens*, the Supreme Court allowed suit for money damages against federal officers in their individual capacities who committed constitutional violations under color of federal law. Plaintiff himself identifies *Bivens* as authorizing a damages remedy; however, Plaintiff requests solely injunctive relief. (Docket #1 at 1, n.1.) Moreover, the Tenth Circuit established,

> There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States.

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) (quoting *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)). Plaintiff's pleading pursuant to *Bivens* bars his claim for injunctive relief against a federal agent in his official capacity, which is in fact, a claim for injunctive relief against the United States. Therefore, the Court recommends dismissal based on Plaintiff's deficient assertion of proper subject matter jurisdiction.

### B. *Standing*

Even if Plaintiff properly pled jurisdiction, the prerequisite of standing to bring a claim precludes Plaintiff's action. Dismissal of a case for lack of standing is proper pursuant to Fed. R. Civ. P. 12(b)(1). *See Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (treating

5

appeal as reviewing dismissal pursuant to Rule 12(b)(1) because the district court determined plaintiffs lacked standing). At the hearing, Plaintiff requested the Court to apply a "liberal" construction of standing to this action, pursuant to *Broadrick v. Oklahoma*. 413 U.S. 601, 612 (1973) (recognizing the Court's alteration "of traditional rules of standing to permit - in the First Amendment area - 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" (citation omitted)). However, the Supreme Court stated this doctrine regarding "facial overbreadth" of a statute "has been employed by the Court sparingly and only as a last resort." *Id.* at 613. The *Broadrick* Court opined that principles of standing "reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Id.* at 611. Accordingly, the Court refrains from extending the limited First Amendment exception in this matter. Thus, the *Lujan* Court's traditional standing analysis applies and requires that, in order to satisfy the jurisdictional requirement of constitutional standing, Plaintiff "must allege (and ultimately prove) that [he has] suffered an 'injury in fact,' that the injury is fairly traceable to the challenged action of the Defendants, and that it is redressable by a favorable decision." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). (Docket #8 at 3; docket #15 at 2.) The Court concludes Plaintiff meets none of the three elements of standing, as set forth below.

Plaintiff asserts his individual injury giving rise to proper standing in this matter stems from a Motion for Attorney's Fees he filed on June 1, 2005, in a case in which he was named as a defendant and subsequently dismissed without prejudice as a party. Defs.' Mot. for Att'y's Fees, *Ptasynski v. CO2 Claims Coal., LLC*, No. 02-cv-00830-WDM-MEH (D. Colo. June 1, 2005). The

District Court granted in part and denied in part the Motion for Attorney's Fees in a March 21, 2006, order. Order, *Ptasynski*, No. 02-cv-00830-WDM-MEH (D. Colo. Mar. 1, 2006). The Motion was granted in part "as to the entitlement of fees but denied in part as to the amount" of the fee award without "further submission," because the Motion had been submitted without "an affidavit of an independent attorney . . . concerning the reasonableness of the hourly rates and hours claimed by the movant." (*Id*. at 7.)

Plaintiff (as a defendant in *Ptasynski*) submitted a response to the District Court's order on April 14, 2006, purposed to satisfy the affidavit requirement. The *Ptasynski* plaintiff then submitted a response to the Motion for Attorney's Fees, which was replied to by Plaintiff and the other relevant *Ptasynski* defendants on May 10, 2006. The case then proceeded as to the other defendants not dismissed without prejudice through jury trial which completed on April 20, 2007. *See Ptasynski v. CO2 Claims Coal.*, No. 02-cv-00830-WDM-MEH, 2007 WL 1306492 (D.C. Colo. May 3, 2007). After the docket entry on May 10, 2006, no other activity on the *Ptasynski* docket relates to Plaintiff. The Court will not speculate why the amount of fees was not conclusively determined and awarded; however, the Court notes that neither Plaintiff, nor any of the other three defendants included in the original motion for fees, has ever filed a Motion for Order, or for Clarification, or for a Status Conference, in regards to the fees he alone asserts give rise to an injury conveying standing in this matter.

In *Lujan*, the Supreme Court established an "injury in fact" must be "concrete and particularized . . . actual or imminent, not 'conjectural' or 'hypothetical.'" 504 U.S. at 560 (citations omitted). Due to the fact that Plaintiff has taken no discernable steps to claim the fees in question (other than the filing of this lawsuit), and none of the other entitled *Ptasynski* defendants have either, the Court views this alleged injury as "conjectural" or "hypothetical." Plaintiff is still free to move

the Court for consideration of the fee calculation, therefore the Court concludes Plaintiff's alleged injury is not an injury-in-fact at all, but is merely a loose end from litigation that needs to be tied up, upon initiative by those to which it pertains.

Plaintiff's asserted injury also falls short of the remaining two elements required to satisfy standing. His injury must be "fairly traceable to the challenged action of the Defendants" and "redressable by a favorable decision." *Lujan*, 504 U.S. at 560-61. "When the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Id*. at 562. A speculative connection between an indirect injury claimed and the challenged action does not fulfill causation for the purposes of standing. *Allen v. Wright*, 468 U.S. 737, 757-58 (1984).

Plaintiff challenges Defendant Biden in his role as President of the U.S. Senate, but fails to allege with any particularity how this federal agent caused Plaintiff to not recover the attorney's fees he claimed and was, in essence, granted, in 2006. In fact, Plaintiff describes no facts demonstrating with any concrete probability that the allegedly "delayed" judicial confirmation process had any effect on the calculation and award of attorney's fees in the *Ptasynski* matter. Plaintiff seeks the Court to infer some causal connection by recognizing an "associated ripple effect;" however, concurrent with the *Allen* Court's conclusion, it is entirely speculative whether two (or three) more judges appointed to the bench in Colorado would generate an award of attorney's fees to Plaintiff in the *Ptasynski* matter any more or less timely than the status quo. The great causal leap Plaintiff requests is simply too far outside of the legal bounds defining standing.[4]

---

[4] Additionally, in response to Plaintiff's claim that "defendants have caused him injury by denying him meaningful access to the judicial power of the United States and that this injury is great, immediate and irreparable," the Court points him to the rather expeditious resolution of the action he presently brings, which was filed on September 9, 2008, and recommended for dismissal not even six months later upon the Motion to Dismiss filed on November 14, 2008. (Docket #15 at 2.) Such evidence directly contradicts Plaintiff's assertion of "great, immediate and irreparable"

8

Moreover, Plaintiff's contention that "the Court can also infer that Plaintiff does not stand alone and that his injury affects many other courts throughout the nation and the litigants therein," thereby inspiring Plaintiff to act "as a member of the people's constituent power," violates the bar against asserting a "generalized grievance," which is a well-settled rule in evaluating prudential standing. *See, e.g., Bd. of County Comm'rs of Sweetwater County v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (reiterating that a plaintiff must also meet the requirements of prudential standing in addition to constitutional standing) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.")). (Docket #15 at 5.) As mentioned by the Supreme Court in *Allen*, barring the "adjudication of generalized grievances" arises from the determination that such claims are "more appropriately addressed in the representative branches." 468 U.S. at 751.

Similarly, Plaintiff cannot meet the third constitutional standing requirement, that his asserted injury could be redressed by a favorable decision in this matter, because "'a federal court is not the proper forum to press' general complaints about the way in which government goes about its business." *Allen*, 468 U.S. at 760 (citation omitted). Even if the Court were to do as Plaintiff suggests and issue a declaratory judgment that the U.S. Senate has somehow voided its Constitutional right and obligation to advise and consent to the appointment of federal judges, nothing in Plaintiff's pleadings demonstrates a causal link between such order and Plaintiff recovering attorney's fees from the *Ptasynski* matter. The Constitution clearly allocates the power to appoint "judges of the supreme court, and all other officers of the United States" to the Executive Branch upon the advice and consent of the Senate, and the judiciary lacks the power to restructure

---

injury stemming from his allegations of "the U.S. Senate [refusing] to perform its duty." (*Id.*)

the "apparatus established by the Executive Branch [and Legislative Branch] to fulfill [their] legal duties" as articulated by the Constitution. U.S. Const. art. II, § 2; *see Allen*, 468 U.S. at 761.

"When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" 468 U.S. at 761. Based on this and the other binding legal precedent set forth herein, the Court is simply unable, by virtue of the separation of powers doctrine underlying constitutional standing, to recognize Plaintiff's satisfaction of such jurisdictional requirement in this matter.

### C. *Political Question*

In addition to the bars of improperly pled jurisdiction and standing, the political question doctrine precludes Plaintiff's action. "Prudence, as well as separation-of-powers concerns, counsels courts to decline to hear 'political questions.'" *Schroder v. Bush*, 263 F.3d 1169, 1173-74 (10th Cir. 2001). The Court evaluates the political question doctrine on a case-by-case basis and considers the following:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

263 F.3d at 1174 (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).

The Constitution commits the power of appointment of federal judges to the Executive Branch, upon the advice and consent of the Senate. U.S. Const. art. II, § 2. Similar to the Tenth Circuit's analysis in *Schroder*, the Court recognizes that while the appointment power of the

10

Executive "expressly involves the participation of the Legislature, nowhere does the Constitution contemplate the participation by the third, non-political branch, that is the Judiciary," in the appointment of "judges of the Supreme Court, and all other officers of the United States." U.S. Const. art. II, § 2; 263 F.3d at 1174 (citation omitted).[5] *See* U.S. Const. art. III. Furthermore, nothing in Article III indicates the Court should presume it has "judicially discoverable and manageable standards" to control the timeliness of actions explicitly delegated by the Constitution to the Executive and Legislative Branches. This leads naturally to the conclusion that the Court would have to make "initial policy determination[s] of a kind clearly for nonjudicial discretion," given the Constitution's clarity regarding the appointment power in this circumstance.

Moreover, the Court believes that by granting Plaintiff's request, the Court would engage in the utmost expression of a "lack of the respect due coordinate branches of government." Plaintiff characterizes his requests for relief as a "desire[ ] to assign legal consequences to the delay and, in this respect, seeks to establish a rule that constitutional inaction is subject to the general rule that, when time is not mentioned, a reasonable time is implied." (Docket #15 at 8.) The Constitution, in its plain text, bestows no such power onto the Judiciary to regulate the timing in which the Executive or Legislature exercises their Constitutional duties, and the Court cannot find an instance where such exercise of power took place. "Article III limits courts to adjudicating cases and controversies, thereby precluding the sort of judicial oversight of the political branches in which [Plaintiff] invite[s] [the Court] to engage." *Schroder*, 263 F.3d at 1175. Plaintiff would do better to seek his requested relief, which is in essence a fully-appointed federal bench in the District of

---

[5]In *Schroder*, the Tenth Circuit evaluated the power of the judiciary to review or regulate foreign policy and commerce activities as committed by the Constitution to the Executive and Legislative Branches. 263 F.3d at 1174-76. This Court can analogize the appointment power and process contested by Plaintiff in this matter to the treaty negotiation and confirmation process discussed by the *Schroder* Court, which concluded the *Schroder* plaintiffs' action was indeed barred by the political question doctrine.

11

Colorado, through the political, not legal, process. For these reasons, the Court concludes improperly pled subject matter jurisdiction, lack of standing, and the political question doctrine require dismissal of Plaintiff's action.

**IV.    Conclusion**

Accordingly, it is hereby RECOMMENDED that Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) [filed November 14, 2008; docket #8] be **GRANTED**.

Dated at Denver, Colorado, this 9th day of February, 2009.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge