IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01929-REB-MEH

JOHN MARSHALL COGSWELL,

    Plaintiff,

v.

UNITED STATES SENATE,

    Defendant.

_____

**SUPPLEMENTAL RECOMMENDATION TO DISMISS**
_____

**Michael E. Hegarty, United States Magistrate Judge.**

Plaintiff filed an Amended Complaint on February 10, 2009. (Docket #23.) The Court, pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1.C, submits this supplement to the Recommendation issued February 9, 2009, and *sua sponte* recommends dismissal of Plaintiff's Amended Complaint with prejudice for lack of subject matter jurisdiction.[1]

**I.    Background**

The Court incorporates by reference the Background as stated in the February 9, 2009 Recommendation. (Docket #22 at 2-3.) Plaintiff now brings his request for a declaratory judgment

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

against the U.S. Senate itself, and not against Joseph R. Biden, Jr. in his capacity as President of the U.S. Senate. However, the Court's analysis of Plaintiff's claim does not change; the U.S. Senate is not amenable to suit, and the Court may not issue the relief requested by Plaintiff because the justiciability requirements of standing and the political question doctrine bar the Court from exercising subject matter jurisdiction over Plaintiff's case.

Plaintiff again requests the Court to issue a declaratory judgment stating "the failure of the U.S. Senate to 'advise and consent' within a reasonable time from the President's nomination of a district judge shall mean that the U.S. Senate has no advice on the appointment and consents to the appointment." (Docket #32 at 9.) Plaintiff further asks that the Court assign a four-month time frame in which the U.S. Senate must advise and consent on the President's nominated judges. (*Id.*)

Fed. R. Civ. P. 12(h)(3) requires, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Dismissal for lack of subject matter jurisdiction is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The Court reiterates the bases for dismissal discussed in the Court's February 9, 2009 Recommendation. (*See* Docket #22.) The Court further offers this supplemental recommendation for *sua sponte* dismissal of Plaintiff's Amended Complaint for lack of subject matter jurisdiction because constitutional and prudential standing, as well as the political question doctrine, bar Plaintiff's claim.

## II. Lack of Constitutional and Prudential Standing

In his Amended Complaint, Plaintiff asserts standing based solely on his proclaimed status "as a member of the constituent power of the United States and all of its citizens." (*Id*. at 6.) Plaintiff argues for extension of the Supreme Court's ruling regarding a "liberal" construction of standing in *Broadrick v. Oklahoma*, which recognized the Court's alteration "of traditional rules of standing to permit - in the First Amendment area - 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" 413 U.S. 601, 612 (1973) (citation omitted). However, the Supreme Court stated this doctrine regarding "facial overbreadth" of a statute "has been employed by the Court sparingly and only as a last resort." *Id*. at 613. The *Broadrick* Court opined that principles of standing "reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Id*. at 611. Accordingly, the Court refrains from extending the limited First Amendment exception in this matter. Thus, the *Lujan v. Defenders of Wildlife* traditional standing analysis applies and requires that, in order to satisfy the jurisdictional requirement of constitutional standing, Plaintiff "must allege (and ultimately prove) that [he has] suffered an 'injury in fact,' that the injury is fairly traceable to the challenged action of the Defendants, and that it is redressable by a favorable decision." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiff presents no facts alleging an injury that is "concrete and particularized [and] actual or imminent, not 'conjectural' or 'hypothetical,'" as required by *Lujan*. 504 U.S. at 560 (citations omitted). Plaintiff contends he fulfills standing as "a member of the constituent power of the United States," and that the alleged "practice" of the U.S. Senate of delaying its advice and consent to the appointment of federal judges adversely affects U.S. citizens' "access to the courts which is an

aspect of the First Amendment right to petition the government for redress of grievances."[2] (Docket #23 at 6.) This contention blatantly violates the bar against asserting a "generalized grievance," which is a well-settled rule in evaluating prudential standing. *See, e.g., Bd. of County Comm'rs of Sweetwater County v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (reiterating that a plaintiff must also meet the requirements of prudential standing in addition to constitutional standing) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.")). (Docket #15 at 5.) As established by the Supreme Court in *Allen*, barring the "adjudication of generalized grievances" arises from the determination that such claims are "more appropriately addressed in the representative branches." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Moreover, "'a federal court is not the proper forum to press' general complaints about the way in which government goes about its business." *Allen*, 468 U.S. at 760 (citation omitted). Even if the Court were to do as Plaintiff suggests and issue a declaratory judgment that the U.S. Senate has somehow voided its Constitutional right and obligation to advise and consent to the appointment of federal judges, nothing in Plaintiff's pleadings demonstrates a causal link between such order and the actual appointment of more judges to the federal bench. The Constitution clearly allocates the power to appoint "judges of the supreme court, and all other officers of the United States" to the Executive Branch upon the advice and consent of the Senate; the Judicial Branch lacks the power to restructure the "apparatus established by the Executive Branch [and Legislative Branch] to fulfill

---

[2]To address Plaintiff's claim that the actions of the U.S. Senate denies meaningful access to the judicial power of the United States for the redress of grievances, the Court points him to the rather expeditious resolution of the action he presently brings, which was filed on September 9, 2008, moved for dismissal by the Government on November 14, 2008, and subsequently recommended for dismissal by the Court on February 9 and February 12, 2009. Such evidence directly contradicts Plaintiff's assertion of an injury stemming from inhibited access to the courts.

[their] legal duties" as articulated by the Constitution. U.S. Const. art. II, § 2; *see Allen*, 468 U.S. at 761. Thus, Plaintiff presents an explicitly prohibited generalized grievance and demonstrates no injury-in-fact, no causation, and no redressability. Therefore, Plaintiff fails to satisfy constitutional and prudential standing.

## III. The Political Question Doctrine

In addition to the bar of constitutional and prudential standing, the political question doctrine precludes Plaintiff's action. "Prudence, as well as separation-of-powers concerns, counsels courts to decline to hear 'political questions.'" *Schroder v. Bush*, 263 F.3d 1169, 1173-74 (10th Cir. 2001). The Court evaluates the political question doctrine on a case-by-case basis and considers the following:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

263 F.3d at 1174 (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).

The Constitution commits the power of appointment of federal judges to the Executive Branch, upon the advice and consent of the Senate. U.S. Const. art. II, § 2. Similar to the Tenth Circuit's analysis in *Schroder*, the Court recognizes that while the appointment power of the Executive "expressly involves the participation of the Legislature, nowhere does the Constitution contemplate the participation by the third, non-political branch, that is the Judiciary," in the

5

appointment of "judges of the Supreme Court, and all other officers of the United States."[3] U.S. Const. art. II, § 2; 263 F.3d at 1174 (citation omitted). *See* U.S. Const. art. III. Furthermore, nothing in Article III indicates the Court should presume it has "judicially discoverable and manageable standards" to control the timeliness of actions explicitly delegated by the Constitution to the Executive and Legislative Branches. This leads naturally to the conclusion that the Court would have to make "initial policy determination[s] of a kind clearly for nonjudicial discretion," given the Constitution's clarity regarding the appointment power in this circumstance.

The Court believes that by granting Plaintiff's request, the Court would engage in the utmost expression of a "lack of the respect due coordinate branches of government." The Constitution, in its plain text, bestows no such power onto the Judiciary to regulate the timing in which the Executive or Legislature exercises their Constitutional duties, and the Court cannot find an instance where such exercise of power took place. "Article III limits courts to adjudicating cases and controversies, thereby precluding the sort of judicial oversight of the political branches in which [Plaintiff] invite[s] [the Court] to engage." *Schroder*, 263 F.3d at 1175. Plaintiff would do better to seek his requested relief through the political, not legal, process. For these reasons, the Court concludes lack of standing and the political question doctrine strip the Court of subject matter jurisdiction and require dismissal of Plaintiff's action.

---

[3]In *Schroder*, the Tenth Circuit evaluated the power of the judiciary to review or regulate foreign policy and commerce activities as committed by the Constitution to the Executive and Legislative Branches. 263 F.3d at 1174-76. This Court can analogize the appointment power and process contested by Plaintiff in this matter to the treaty negotiation and confirmation process discussed by the *Schroder* Court, which concluded the *Schroder* plaintiffs' action was indeed barred by the political question doctrine.

6

**IV.     Conclusion**

Accordingly, it is hereby RECOMMENDED that Plaintiff's Amended Complaint be *sua sponte* **dismissed with prejudice** for lack of subject matter jurisdiction.

Dated at Denver, Colorado, this 12th day of February, 2009.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge